**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| APRINTESS WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA, *et al.*,<br><br>    Defendants. | Case No. 2:16–cv–1283–VCF<br><br>**ORDER**<br><br>MOTION FOR SUMMARY JUDGMENT (ECF NO. 37), MOTION TO REDACT OPPOSITION AND SEAL EXHIBIT (ECF NO. 43), ALTERNATIVE REQUEST FOR FRCP 56(D) RELIEF (ECF NO. 45) |

Before the Court is Defendants Officers Krook and Chandler's motion for summary judgment (ECF No. 37), Plaintiff Aprintess Williams' motion to redact his opposition to the motion for summary judgment and seal Exhibit 5 (ECF No. 43), and Plaintiff's alternative request for Fed. R. Civ. P. 56(d) relief (ECF No. 45). For the reasons discussed below, the Court grants in part and denies in part Defendants' motion for summary judgment, grants Plaintiff's motion to redact and seal, and denies as moot Plaintiff's request for Fed. R. Civ. P. 56(d) relief.

**BACKGROUND**

In his amended complaint, Plaintiff asserts that officers working for the Department of Parole and Probation violated his constitutional rights and intentionally inflicted emotional distress on him. (ECF No. 13 at 1-2, 6). Plaintiff alleges that during a parole appointment in June 2016, officers drove him "around Las Vegas for…five (5) hours in handcuffs, without food or water." (*Id.* at 2, 4). Officers searched Plaintiff's safe deposit box at a bank, a friend's residence that Plaintiff has access to, and Plaintiff's home. (*Id.* at 4-5). During this, "Plaintiff told the officers he did not feel well and demanded he be taken to the Clark County Detention Center," specifically stating "his shoulders were numb." (*Id.*

1

at 5). "Plaintiff was never allowed water despite complaining of being hot, uncomfortable and not feeling well." (*Id.* at 6). Plaintiff eventually passed out. (*Id.*). After being taken to a hospital, Plaintiff "was diagnosed with having heat stroke." (*Id.*). Plaintiff asserts he has suffered "humiliation, anxiety and a loss of sleep" as a result of the officers' actions. (*Id.* at 7).

On September 20, 2017, Defendants filed a motion for summary judgment. (ECF No. 37). Defendants argue they are entitled to qualified immunity because "[t]here is no clearly established case law that indicates a simple complaint of not feeling well, absent anything else, requires an officer to jump to immediately fulfill the transportation desires of the inmate beyond their intended route." (*Id.* at 3-4). Defendants point out that Plaintiff's amended complaint fails to identify which specific constitutional right was violated. (*Id.* at 5). Defendants assert that Plaintiff cannot establish that the officers "were deliberatively indifferent to his medical needs" under the Eighth Amendment because "[n]othing indicates that Defendants knew of any risk to Plaintiff's health or that he disregarded that risk by failing to take any action." (*Id.* at 6). Defendants also argue that "Plaintiff waived his Fourth Amendment rights as a condition of his parole. Therefore, the Fourth Amendment cannot be the basis of his alleged constitutional violation claim." (*Id.* at 7). Defendants finally assert that there is no evidence to support Plaintiff's intentional infliction of emotional distress ("IIED") claim because the officers' conduct was not sufficiently outrageous and Plaintiff did not suffer compensable emotional distress. (*Id.* at 9).

On October 13, 2017, Plaintiff filed a response. (ECF No. 40). Plaintiff argues the motion for summary judgment is "devoid of facts and any admissible evidence" because "discovery is still open," including the deposition of the Defendants. (*Id.* at 1). Attached to Plaintiff's response is Plaintiff's declaration, which adds depth to the amended complaint. (ECF No. 40-2). Plaintiff states he asked for water multiple times during the incident, the "air conditioning, if any" in the car "was insufficient to cool [him] down," and at one point the Defendants drank ice cold water in front of Plaintiff and refused to give

him any. (*Id.* at 2-4). Plaintiff asserts Defendants are not entitled to qualified immunity because Plaintiff's right to medical care is well-established and the officers clearly violated that right. (ECF No. 40 at 14-15). Plaintiff argues there is, at minimum, a material factual dispute regarding Plaintiff's medical indifference claim under the Fourteenth Amendment because dehydration and nerve damage are objectively serious medical complaint and officers ignored Plaintiff's numerous complaints. (*Id.* at 8-14). Plaintiff also asserts questions of fact remain regarding his IIED claim. (*Id.* at 17). Plaintiff finally argues questions of fact remain regarding whether officer violated his Fourth Amendment right because the parole agreement attached to the motion for summary judgment was not authenticated. (*Id.* at 17-18; ECF No. 42). In the alternative to denying the motion for summary judgment, Plaintiff asks that any ruling on the motion be continued for further discovery under Fed. R. Civ. P. 56(d). (ECF No. 45 at 18-19). Plaintiff also moves to seal and redact portions of his response relating to his health information, including Exhibit 5 attached to the response (ECF No. 40-5). (ECF No. 43).

On October 26, 2017, Defendants filed a reply (ECF No. 46). Defendants asserts the qualified immunity question is ripe for determination because it is a question of law and "[n]o amount of fact discovery will make a difference regarding Defendants' legal immunity from suit." (*Id.* at 2). Discussing the parties' disagreement over whether the Eighth or Fourteenth Amendment applies to Plaintiff's medical indifference claim, Defendants state "the fact that there is even disagreement regarding the appropriate standard underscores the deficiency of Plaintiff's claim." (*Id.* at 3). Defendants question Plaintiff's declaration, stating that "surely" the facts must have been different, and argue that because the declaration has "not been subject to cross-examination or greater scrutiny, therefore [it] ought not to be considered at face value but a desperate attempt to avoid summary judgment." (*Id.* at 5-6). Attached to the reply is a declaration authenticating the parole agreement. (ECF No. 46-1).

3

The Court held a hearing on December 18, 2017. (ECF No. 55). At the hearing, Plaintiff's counsel stated the authentication of the parole agreement was no longer in dispute. Defense counsel also conceded that Defendant did not have standing to assert a Fourth Amendment violation regarding the search of Defendant's friend's residence.

## MOTION TO REDACT AND SEAL

"The court recognizes that the need to protect medical privacy has qualified as a 'compelling reason,' for sealing records in connection with a dispositive motion." *Williams v. Nevada Dep't of Corr.*, No. 2:13-CV-941-JAD-VCF, 2014 WL 3734287, at *1 (D. Nev. July 29, 2014). In addition, Defendants did not file an opposition to Plaintiff's motion, and "[t]he failure of an opposing party to include points and authorities in response to any motion constitutes a consent to granting the motion." LCR 47-3.

The Court grants Plaintiff's motion to redact his opposition and seal Exhibit 5 to the extent that they discuss Plaintiff's medical history. Plaintiff's opposition was docketed three separate times as ECF Nos. 40, 41, and 45. ECF Nos. 40 and 45 were not filed under seal. They have been redacted and Exhibit 5 was omitted from the attachments with the indication that it would be filed under seal. ECF No. 41 was filed under seal. It is unredacted and Exhibit 5 is included. Therefore, ECF No. 41 will remain under seal in this case.

## MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the court's role is not to weigh the evidence, make credibility determinations, or determine the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017)

4

(*quoting United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "The district court must not only properly consider the record on summary judgment, but must consider that record in light of the governing law." *Id*. at 442 (internal citation omitted).

**I.     Qualified Immunity**

"The determination of qualified immunity necessitates three inquiries: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue." *Sloman v. Tadlock*, 21 F.3d 1462, 1467 (9th Cir. 1994). "[T]he 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). However, "[a] line of Ninth Circuit cases holds that the qualified immunity determination should be made by the jury if it is based on facts which are genuinely in dispute," such as the officer's knowledge and what the officer did or did not do. *Sloman*, 21 F.3d at 1467.

**A. The specific rights allegedly violated**

Plaintiff's amended complaint[1] fails to list the specific constitutional rights he believes were violated by Defendants' conduct. However, it is clear that Plaintiff intended to bring claims based on his Fourth and Fourteenth Amendment rights. The Court's previous Order granting Defendants' motion for more definite statement, which led to Plaintiff's amended complaint, noted the original complaint "quoted the language of the Fourth and Fourteenth amendments. … From these citations, the court was able to conclude that Williams's wished to bring § 1983 claims… presumably for violations of his rights under the Fourth and Fourteenth Amendments." (ECF No. 12 at 2).

---

[1] The Court notes that Plaintiff's original and amended complaint were filed before Plaintiff was appointed counsel. (ECF Nos. 4, 13, 18).

5

Though Defendants argue the exact rights Plaintiff's complaint relies on are unclear, Defendants were able to ascertain that Plaintiff's claims are for deliberate indifference to Plaintiff's serious medical needs and violating Plaintiff's right against illegal search and seizure. (ECF No. 37 at 5 and 7). In addition, the debate regarding whether Plaintiff's deliberate indifference claim relies on the Eighth or Fourteenth Amendment is largely immaterial. Citing different amendments and cases, Plaintiff and Defendants substantively agree on the standard used in deliberate indifference claims. (ECF No. 37 at 5; ECF No. 40 at 10).

**B. Whether the rights are clearly established**

1. Deliberate Indifference to Serious Medical Needs

It is clearly established that detainees who have "been neither charged nor convicted of a crime" have a due process right that protects them from the government's "failure to provide care for serious medical needs." *Lolli v. Cty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003). Defendants sole argument on this issue appears to be that, "There is no clearly established case law that indicates a simple complaint of not feeling well, absent anything else, requires an officer to jump to immediately fulfill the transportation desires of the inmate beyond their intended route." (ECF No. 37 at 4).

The Court does not agree with Defendants' attempt to hyper-technically define Plaintiff's claim. Plaintiff alleges that Defendants failed to respond to Plaintiff's complaints of being hot, thirsty, and uncomfortable and waited until Plaintiff lost consciousness to take action. Plaintiff's claim does not rely on "a simple complaint of not feeling well" and Defendants' refusal to transport Plaintiff to a specific location. Plaintiff's complaint relies on five hours of inaction in the face of specific complaints regarding confinement conditions affecting his health. This clearly falls within Plaintiff's right to be protected from the government's indifference to medical needs while being detained.

2. <u>Illegal Search and Seizure</u>

It is clearly established that individuals have the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. However, Defendants argue that "Plaintiff waived his Fourth Amendment rights as a condition of his parole." (ECF No. 37 at 7). At the December 18, 2017 hearing, Plaintiff's counsel conceded that the parole agreement was authentic and that Defendant did not have standing to assert a Fourth Amendment violation regarding the search of Defendant's friend's residence. Based on the terms of the parole agreement,[2] the Court grants Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment illegal search and seizure claim.

**C. Whether a reasonable officer would believe the conduct at issue was lawful**

Defendants argue that they "did not violate Plaintiff's constitutional rights" and "[e]ven if this Court were to find a constitutional violation…Defendants are still entitled to qualified immunity" because "there is nothing to place the officers on notice that they would be violating Plaintiff's constitutional rights." (ECF No. 37 at 4). The Court will jointly address whether questions of fact remain regarding (1) a violation of Plaintiff's constitutional rights or (2) Defendants' belief that their conduct was lawful. *See Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009).

To prevail on a deliberate indifference claim, a plaintiff must establish he was "(1) confined under conditions posing a risk of objectively, sufficiently serious harm and (2) that the officials had a sufficiently culpable state of mind in denying the proper medical care." *Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

---

[2] The Court declines to consider Plaintiff's arguments raised for the first time at the December 18, 2017 hearing regarding the reasonableness of the searches, as Defendants did not have a chance to respond. *See United States v. Joubert*, 234 F.3d 1279 (9th Cir. 2000); *McKenzie v. Day*, 57 F.3d 1461, 1478 (9th Cir.), *opinion adopted on reh'g en banc,* 57 F.3d 1493 (9th Cir. 1995).

7

The Court finds that questions of fact remain regarding the conditions of Plaintiff's confinement and Defendants' state of mind. There has been very little discovery done in this case. The only evidence before the Court establishing what actually took place during Plaintiff's detention is Plaintiff's declaration. (ECF No. 40-2). According to the declaration, Plaintiff asked for water and complained of feeling ill multiple times during the five-hour detention, and Defendants went so far as to drink cold water in front of Plaintiff and refuse to provide him with any water. (*Id.* at 2-5). While Defendants acknowledged Plaintiff's statements, they took no action until Plaintiff lost consciousness, possibly due to heat stroke. (*Id.*). Based on this evidence, there is a genuine dispute as to whether Defendants knowingly confined Plaintiff under conditions posing a risk a risk of serious harm.

The Court is not persuaded by Defendants' argument that Plaintiff's declaration "ought not to be considered at face value" because it has "not been subject to cross-examination or greater scrutiny." (ECF No. 46 at 5-6). Defendants chose to file a motion for summary judgment before conducting a deposition of Plaintiff. In addition, Defendants failed to attach any declaration to support their version of the facts in this case, choosing instead to rely on Plaintiff's complaint. The Court is also not persuaded by the argument raised by Defendants' counsel at the December 18, 2017 hearing that the Court does not need to addressing any factual disputes to rule on Defendants' qualified immunity. Defendants' counsel consistently argued that there was "nothing to show" that Defendants created a risk of harm or were deliberately indifferent to Plaintiff, demonstrating the importance of factual disputes in this motion for summary judgment. Therefore, Defendants' motion for summary judgment is denied as to Plaintiff's deliberate indifference claim.

## II. Intentional Infliction of Emotional Distress

Defendants argue "there is no evidence to support [Plaintiff's] IIED claim because Plaintiff suffered no emotional distress" and "Plaintiff's averments regarding Defendants' conduct fall far, far short

8

of demonstrating extreme and outrageous misconduct." (ECF No. 37 at 9). Plaintiff argues Defendants "engaged in extreme and outrageous conduct when they forced [Plaintiff] to endure temperature in excess of 100 degrees for 5 hours while denying him water and ignoring his complaints of dehydration and illness" and Plaintiff "endured confusion, feelings of helplessness, anxiety, fear, and indignity after suddenly collapsing, and believing he would lose his life with the onset of extreme chest pain and difficulty breathing." (ECF No. 40 at 17).

Under Nevada law, the elements of an IIED claim are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 378, 989 P.2d 882, 886 (1999) (*quoting Star v. Rabello,* 97 Nev. 124, 125, 625 P.2d 90, 92 (1981). The showing of severe or extreme emotional distress is somewhat lessened in cases where Defendants' actions caused a "physical impact to the Plaintiff." *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933-34 (D. Nev. 2010); *see also Olivero v. Lowe,* 116 Nev. 395, 400, 995 P.2d 1023, 1026 (2000) (explaining that the physical manifestation requirement is more relaxed for damage claims involving assault)).

The Court finds that questions of fact remain regarding whether Defendants' actions were sufficiently extreme and outrageous and whether Plaintiff suffered compensable emotional distress. As previously discussed, Plaintiff's allegations regarding Defendants' conduct could demonstrate that Defendants knowingly confined Plaintiff in a manner that posed a risk of serious harm. This would be outrageous conduct. Plaintiff alleges that as a result of this conduct, he suffered from heat exposure/exhaustion and felt "serious anxiety and fear for several months after the event." (ECF No. 40-2 at 5-6). The combination of physical and emotional harm suffered by Plaintiff are sufficient to support

an IIED claim at this time. Therefore, Defendants' motion for summary judgment is denied as to Plaintiff's IIED claim.

The Court has determined that genuine issues of material fact exist regarding Plaintiff's deliberate indifference and IIED claims and Defendants' qualified immunity defense. The Court has also concluded that Plaintiff's Fourth Amendment claim fails as a matter of law, and it does not appear that further discovery is needed on this issue. Therefore, Plaintiff's alternative request for Fed. R. Civ. P. 56(d) relief (ECF No. 45) is denied as moot.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendants' motion for summary judgment (ECF No. 37) is GRANTED IN PART AND DENIED IN PART. Summary judgment is granted as to Plaintiff's illegal search and seizure claim. Summary judgment is denied as to Plaintiff's deliberate indifference and IIED claims and Defendants' qualified immunity defense.

IT IS ALSO ORDERED that Plaintiff's motion to redact his opposition to the motion for summary judgment and seal Exhibit 5 (ECF No. 43) is GRANTED.

IT IS ALSO ORDERED that Plaintiff's alternative request for Fed. R. Civ. P. 56(d) relief (ECF No. 45) is DENIED AS MOOT.

DATED this 19th day of December, 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE