# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\*\*\*

APRINTESS WILLIAMS,

        Plaintiff,

vs.

STATE OF NEVADA, *et al.*,

        Defendants.

Case No. 2:16–cv–1283–VCF

**ORDER**

MOTION FOR SUMMARY JUDGMENT [ECF NO. 63] AND MOTION TO SEAL [ECF NO. 68]

    Before the Court is Defendants Officers Krook and Chandler's Motion for Summary Judgment (ECF No. 63) and Plaintiff Aprintess Williams' Motion to Redact Plaintiff's Opposition to Defendant's Motion for Summary Judgment and to Seal Exhibit 5 Thereto (ECF No. 68). For the reasons discussed below, the Court grants in part and denies in part Krook and Chandler's motion for summary judgment and grants Williams' motion to redact and seal.

## BACKGROUND

**I.    Complaint and First Motion for Summary Judgment**

    In his amended complaint, Williams brings civil rights and intentional infliction of emotional distress (IIED) claims against Krook and Chandler.[1] (ECF No. 13 at 1-2, 6). The complaint asserts that in June 2016, officers working for the Department of Parole and Probation drove Williams "around Las Vegas for…five (5) hours in handcuffs, without food or water" while searching various locations Williams allegedly had access to. (*Id.* at 2, 4-5). Officers did not take action when Williams "told the officers he did not feel well and demanded he be taken to the Clark County Detention Center." (*Id.* at 5). Williams

---

[1] The other Defendants named in the amended complaint have been dismissed from this case. (ECF No. 9 at 2).

1

eventually passed out and "was diagnosed with having heat stroke." (*Id.* at 6). Williams asserts he has suffered "humiliation, anxiety and a loss of sleep" as a result of the officers' actions. (*Id.* at 7).

Krook and Chandler filed a previous motion for summary judgment on September 20, 2017, before any discovery had taken place in the case. (ECF No. 37). Based on Williams' complaint and declaration attached to his opposition to the motion, the Court found questions of fact remained and denied the motion for summary judgment as to Williams' deliberate indifference and IIED claims. (ECF No. 56 at 8-10).

**II.  Discovery**

Since the Court decided Krook and Chandler's previous motion for summary judgment, the parties have conducted some discovery in this case, including the depositions of the parties and key witnesses. Based on discovery, the facts of the underlying incident, construed in Plaintiff's favor, are as follows:

On June 10, 2014, at approximately 1:00 pm, Williams went to an appointment with his parole officer, Officer Krook. (ECF No. 63-1 at 8). Krook was in training, and his supervisor was Officer Chandler. (ECF No. 66-1 at 10). After about 20 minutes, Williams was handcuffed by Krook and taken outside to a covered parking deck for officers to search his car. (ECF No. 63-1 at 9-10). They were outside for 20-30 minutes. (*Id.*). They then went back inside for approximately 30-45 minutes, while Williams was still handcuffed. (*Id.* at 10-11). Williams testified that during this period, he asked Krook for water because he was thirsty and sweating excessively, but that request was denied. (*Id.* at 11, 17).

Between 2:20-2:35 pm, Chandler left the Parole and Probation office with Williams and two other officers—Erickson[2] and Hendrickson, neither of which is named as a defendant in this case. (*Id.*; ECF No. 63-4 at 3). At the time Williams left the office, he testified he was feeling "parched after standing

---

[2] There appears to be some confusion over whether the fourth officer involved in the underlying incident was Erickson or McIntosh. However, it is not disputed that the fourth officer is not named as a defendant, and the exact identity of the fourth officer does not impact the motion for summary judgment.

2

out, I was thirsty… But I guess other than that at that time just dehydrated I guess. A little thirsty." (ECF No. 63-1 at 12). Krook remained at the office. (ECF No. 63-1 at 14). While Krook was aware the officers and Williams would be visiting Williams' home, he did not know about any other planned visits. (ECF No. 63-2 at 3). Hendrickson knew that there would be visits to other locations at the time that they left the Parole and Probation office. (ECF No. 66-3 at 5-6). Chandler made the decision to search the other locations (ECF No. 63-3 at 3), and Hendrickson stated he was "just doing what Officer Chandler told [him] to do." (ECF No. 66-4 at 16).

For the rest of the relevant timeframe, Williams rode in a vehicle with Erickson and Hendrickson while Chandler rode in a separate vehicle. (ECF No. 63-1 at 11). Hendrickson testified at his deposition that the car was "relatively cool" and "pretty nice." (ECF No. 63-4 at 3). Williams asserts that the air conditioning was "insufficient, like it wasn't working properly." (ECF No. 63-1 at 12).

The officers and Williams went to three locations. First, they went to a Wells Fargo bank. (*Id.*). While waiting, Williams asked Erickson, Hendrickson, and Chandler for water, but the officers said they could not provide any. (*Id.* at 14). After sitting handcuffed in the car, Williams told the officers that he felt faint and could not feel his arms because the handcuffs were too tight. (ECF No. 66-3 at 4). Eventually, Williams was un-cuffed and taken inside the bank for 5-10 minutes by Chandler, Erickson, and Hendrickson. (ECF No. 63-1 at 12). Williams testified that this made him feel "totally humiliated" because the officers essentially "assassinated [his] character." (*Id.* at 14-15). Afterwards, Williams was re-cuffed. (*Id.* at 12). While at the bank, Williams told officers that he was short of breath, dizzy, thirsty, and in pain, and "begged Officer Chandler to release [him] or take [him] to jail so that [he] could get medical attention." (ECF No. 66-3 at 4). Prior to returning to the car, Williams told Hendrickson and Erickson that he was dizzy and wanted to go to the hospital. (ECF No. 63-1 at 13). He was told to speak to Chandler. (*Id.*).

3

The officers and Williams next went to the residence of an associate of Williams. (*Id.* at 12-13). Once they got to the next location, Williams again asked to be taken to the hospital because he was dizzy and not feeling well, but was told to "be quiet and wait." (*Id.*). He told Chandler that he was "dehydrated, [his] shoulders were numb, and [he] needed food." (ECF No. 66-3 at 5). Williams stayed in the car, handcuffed, with either Erickson or Hendrickson for 30-40 minutes. (ECF No. 63-1 at 13).

Finally, the officers and Williams went to Williams' home. (*Id.*). The drive took 40 minutes, and Williams waited in the car an additional 20-30 minutes once they got there, all while handcuffed. (*Id.*). At Williams' house, Hendrickson informed Chandler that Williams was overheated. (ECF No. 66-4 at 14). Hendrickson does not remember ever telling Chandler that Williams was asking for water. (*Id.*). Williams was taken inside his home, still handcuffed, where he passed out. (ECF No. 63-1 at 13). Hendrickson testified that Williams exclaimed that he was dying and could not breathe. (ECF No. 66-3 at 7, 9). The officers summoned an ambulance at 5:28 pm, which took Williams to the hospital. (*Id.* at 7-9; ECF No. 63-6). Doctors informed Williams that the loss of consciousness was likely brought on by heat exposure or exhaustion. (ECF No. 66-3 at 4; ECF No. 67-5 at 3). Since then, Williams testified that he has had anxiety and loss of sleep. (ECF No. 63-1 at 14).

**III.    Second Motion for Summary Judgment**

On July 9, 2018, Defendants filed a second motion for summary judgment. (ECF No. 63). Defendants argue that Williams did not have an objectively serious medical condition during his time with either Krook or Chandler. (*Id.* at 9-11). Defendants also assert that they did not act with a sufficiently culpable state of mind, because other non-defendant officers had a greater knowledge of Williams' condition. (*Id.* at 11-14). Finally, Defendants argue that Plaintiff has failed to establish a claim for IIED because Williams did not suffer severe distress and Defendants' conduct was not sufficiently extreme or outrageous. (*Id.* at 15-17).

On August 14, 2018, Williams filed a response (ECF No. 66) and a motion to seal (ECF No. 68). Williams argues that Krook and Chandler were deliberately indifferent to Williams' condition while he was in their custody, whether or not Williams was outside their physical presence. (*Id.* at 11-15). Williams also asserts questions of material fact remain regarding Williams' emotional distress. (*Id.* at 15-17).

In addition to the arguments described above, the Court also considered Defendant's reply (ECF No. 70) and the arguments of counsel during the September 7, 2018 hearing (ECF No. 72).

## MOTION TO REDACT AND SEAL

"The court recognizes that the need to protect medical privacy has qualified as a 'compelling reason,' for sealing records in connection with a dispositive motion." *Williams v. Nevada Dep't of Corr.*, No. 2:13-CV-941-JAD-VCF, 2014 WL 3734287, at *1 (D. Nev. July 29, 2014). In addition, Defendants filed a non-opposition to Plaintiff's motion (ECF No. 69), and "[t]he failure of an opposing party to include points and authorities in response to any motion constitutes a consent to granting the motion." LCR 47-3.

The Court grants Plaintiff's motion to redact his opposition and seal Exhibit 5 to the extent that they discuss Plaintiff's medical history. Plaintiff's opposition was docketed twice as ECF Nos. 66 and 67. ECF No. 66 was not filed under seal. It was redacted and Exhibit 5 was omitted from the attachments with the indication that it would be filed under seal. ECF No. 67 was filed under seal. It is unredacted and Exhibit 5 is included. Therefore, ECF No. 67 will remain under seal in this case.

## MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the court's role is not to weigh the evidence, make credibility determinations, or determine the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Summary judgment is

5

appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (*quoting United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "The district court must not only properly consider the record on summary judgment, but must consider that record in light of the governing law." *Id*. at 442 (internal citation omitted).

## I. Deliberate Indifference Claims

Detainees who have "been neither charged nor convicted of a crime" have a due process right that protects them from the government's "failure to provide care for serious medical needs." *Lolli v. Cty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003). To prevail on a deliberate indifference claim, a plaintiff must establish he was "(1) confined under conditions posing a risk of objectively, sufficiently serious harm and (2) that the officials had a sufficiently culpable state of mind in denying the proper medical care." *Id.* at 419 (internal quotations omitted).[3] "[I]f a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction." *Id.* (internal quotations omitted). However, "[e]ven if a prison official *should* have been aware of the risk, if he 'was not, then [he] has not [been deliberately indifferent], no matter how severe the risk." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (quoting *Gibson v. Cnty. of Washoe,* 290 F.3d 1175, 1188 (9th Cir.2002)).

Williams has provided sufficient evidence to create a question of fact regarding whether he was confined under conditions posing a risk of objectively, sufficiently serious harm. He testified during his deposition that over the space of approximately four-and-a-half hours, he was kept outside or in a car with insufficient air conditioning with brief trips indoors. He was not provided any water during this period.

---

[3] The Court finds the standard set for in *Lolli* is more applicable to this case than the standard Defendants cite in *Wilson v. Seiter*, 501 U.S. 294 (1991).

6

Hendrickson confirmed that Williams complained about the heat several times and asked for water. Williams was kept handcuffed for several hours and complained about not feeling well due to his confinement. Afterwards, Williams lost consciousness and had to be taken to the hospital. Doctors informed Williams that the loss of consciousness was likely brought on by heat exposure or exhaustion.

However, Krook and Chandler argue that they were not responsible for the conditions of Williams' confinement, and they did not have a sufficiently culpable state of mind in denying Williams medical care. Krook only interacted with Williams at the Parole and Probation office. Chandler drove in a separate car than Williams and interacted with Williams for a few relatively short periods during the four-and-a-half hours. The officers who transported Williams and spent the most time with him, Hendrickson and Erickson, are not defendants in this case.

The Court finds Krook is entitled to summary judgment on Williams' deliberate indifference claim. Williams' allegations against Krook focus on (1) denying Williams water while at the Parole and Probation office and (2) handcuffing Williams. Though Krook denied Williams water, this denial did not pose a risk of objectively, sufficiently serious harm at the time the denial was made. Williams was inside the office (which no one argues was hot) for approximately an hour and outside in a covered parking structure for approximately half an hour. While Krook was the first officer to handcuff Williams, Krook did not know about the three different locations Williams would be transported to. In addition, Williams was uncuffed when he got to Wells Fargo and recuffed by another officer. That action ended Krook's impact on Williams' health. Krook was not responsible for the other officers' actions. Though Krook was the officer assigned to Williams, Krook was still being trained by Chandler, who eventually took custody of Williams.

The Court finds that genuine disputes as to material facts remain in Williams' deliberate indifference claim against Chandler. Williams' allegations against Chandler focus on (1) actions taken

by Chandler, individually, and (2) actions taken by other officers during their transportation of Williams. Williams testified at his deposition that he asked Chandler for water. Hendrickson testified at his deposition that he told Chandler that Williams was overheated. In his Declaration,[4] Williams stated that he directly asked Chandler to take him to the hospital or jail to get medical attention. Taking all these allegations together, there is a question of fact as to whether Chandler was aware that failing to respond to Williams' complaints posed a risk of objectively, sufficiently serious harm to Williams' health.[5]

There is also a question of fact regarding Chandler's responsibility for the actions of Erickson and Hendrickson. "Supervisors aren't vicariously liable for constitutional violations under section 1983. *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014). However,

> A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."

*Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal quotes and citations omitted). Even if Chandler did not have significant personal contact with Williams during the incident, Chandler could be

---

[4] Though a declaration or affidavit is self-serving and uncorroborated, it still must be considered by the court if it contains facts within the declarant's personal knowledge that would be admissible into evidence. *See Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 693 (9th Cir. 2017).

[5] The Court does not agree with Defendants' assertion at the September 7, 2018 hearing that Williams only had a serious medical condition once he lost consciousness. Losing consciousness was the final symptom of Williams' health condition, heat exposure or exhaustion, rather than the cause of it.

liable for failing to supervise the officers assisting him and ensuring that they did not ignore Williams' health concerns.

Chandler also argues that even if a violation of Williams' rights occurred, he has qualified immunity. "The determination of qualified immunity necessitates three inquiries: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue." *Sloman v. Tadlock*, 21 F.3d 1462, 1467 (9th Cir. 1994). The Court previously determined that Williams' right to care for serious medical needs was well-established. (ECF No. 56 at 6). "A line of Ninth Circuit cases holds that the qualified immunity determination should be made by the jury if it is based on facts which are genuinely in dispute," such as the officer's knowledge and what the officer did or did not do. *Sloman*, 21 F.3d at 1467. The Court finds that qualified immunity in this case cannot be resolved in a motion for summary judgment, as it is highly fact-intensive.

## II. Intentional Infliction of Emotional Distress Claims

Under Nevada law, the elements of an IIED claim are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 378, 989 P.2d 882, 886 (1999) (*quoting Star v. Rabello,* 97 Nev. 124, 125, 625 P.2d 90, 92 (1981). The showing of severe or extreme emotional distress is somewhat lessened in cases where Defendants' actions caused a "physical impact to the Plaintiff." *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933-34 (D. Nev. 2010); *see also Olivero v. Lowe,* 116 Nev. 395, 400, 995 P.2d 1023, 1026 (2000) (explaining that the physical manifestation requirement is more relaxed for damage claims involving assault)).

9

The Court finds Krook is entitled to summary judgment on Williams' IIED claim. As previously discussed, there is insufficient evidence that Krook confined Williams in a manner that posed a risk of serious harm. Therefore, there is insufficient evidence that Krook committed extreme and outrageous conduct resulting in emotional distress.

The Court finds that genuine disputes as to material facts remain in Williams' IIED claim against Chandler. As previously discussed, Williams allegations regarding Chandler's conduct could demonstrate that Chandler knowingly confined Williams in a manner that posed a risk of serious harm. This would constitute extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress. Williams alleges that as a result of this conduct, he suffered from heat exposure or exhaustion and felt serious anxiety and fear after the event. The combination of physical and emotional harm suffered by Williams are sufficient to support an IIED claim at this time.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Krook and Chandler's Motion for Summary Judgment (ECF No. 63) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to the claims against Krook and denied as to the claims against Chandler. All claims against Krook are hereby DISMISSED.

IT IS FURTHER ORDERED that Williams' Motion to Redact Plaintiff's Opposition to Defendant's Motion for Summary Judgment and to Seal Exhibit 5 Thereto (ECF No. 68) is GRANTED.

IT IS FURTHER ORDERED that the parties' Joint Pretrial Order is due by October 10, 2018.

DATED this 10th day of September, 2018.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE